IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| 8600 LANDIS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SEA ISLE CITY, et al.,<br><br>    Defendants. | Civil No. 17-2234 (RMB/JS)<br><br>**OPINION** |

**APPEARANCES:**

FOX ROTHSCHILD LLP
By:  Timothy J. Bloh, Esq.
     Christopher C. Fallon, III, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, New Jersey 08401
          Counsel for Plaintiff

MADDEN & MADDEN, P.A.
By: Patrick J. Madden, Esq.
108 Kings Highway East, Suite 200
P.O. Box 210
Haddonfield, New Jersey 08033
          Counsel for Defendants City of Sea Isle City, Leonard
          Desiderio, George Savastano and Cornelius R. Byrne

COOPER LEVENSON, P.A.
By: Russell L. Lichtenstein, Esq.
1125 Atlantic Avenue, 3rd Floor
Atlantic City, New Jersey 08401
          Counsel for Defendants Kix McNutley's and Sea Isle Inn

SWARTZ CAMPBELL LLC
By: Joseph A. Venuti, Jr., Esq.
1000 Crawford Place, Suite 220
Mount Laurel, New Jersey 08054
          Counsel for Defendant Paul J. Baldini, Esq.

**BUMB**, UNITED STATES DISTRICT JUDGE:

This suit arises out of proceedings before the City of Sea Isle City's Planning Board.  Plaintiff 8600 Landis, LLC, asserts that Defendants, various City officials and two private businesses, improperly used the zoning approval and permit process to delay construction of Plaintiff's mixed use building.

Before the Court are Defendants' Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons stated herein, the Motion to Dismiss brought by Defendants Kix McNutley's and Sea Isle Inn ("the Restaurant Defendants") will be granted in its entirety, and the Motions to Dismiss filed by the other Defendants will be granted in part and denied in part.

## I.    FACTS

As alleged by Plaintiff, in May, 2010, the Sea Isle City Planning Board granted "preliminary and final site plan approval and variance relief" to Plaintiff's predecessor-in-interest "to construct a three (3) story mixed use building containing 9,669 square feet of interior and 'outdoor' restaurant space on the first floor; and thirteen (13) four bedroom residential units on the second and third floors."  (Amend. Compl. ¶ 21)  Defendant Planning Board Member Leonard Desiderio, who was also the Mayor of Sea Isle City during the relevant time period[1], "recused himself

_____

[1]  It appears that the Mayor is a member of the Planning Board by operation of law.  See N.J.S.A. § 40:55D-23(a).

2

from Plaintiff's application and abstained from voting, presumably recognizing the conflict in that his businesses, [Defendant] Sea Isle Inn and [Defendant] Kix McNutley's, are competitors of Plaintiff." (Id. ¶ 22)[2] "Despite his public recusal and abstention," Defendant Desiderio allegedly "stayed involved behind the scenes in undermining Plaintiff's project to favor [Desiderio's] own personal business interests." (Id. ¶ 23)

On December 15, 2014, the "Original Plans" for Plaintiff's mixed use building "w[ere] approved by the Planning Board Engineer." (Amend. Compl. ¶ 28) Two days later, on December 17, 2014, Plaintiff submitted a "Revised Plan Set" which "reduced the number of bedrooms in the thirteen (13) residential units from 4 to 3 and changed the front façade entrance doors by bringing the doors to street level." (Id. ¶ 31) Shortly thereafter, on December 30, 2014, the Planning Board "administratively approved" the Revised Plan and "fully executed," although apparently did not issue, "a permit set." (Id. ¶ 33)

Similarly, on April 1, 2015, the Planning Board "approved" a "Revised Fit-Out Plan" which was an "Accessibility Plan" apparently related to the restaurant portion of the project. (Amend. Compl. ¶¶ 35, 37, 38)

---

[2] Thus, the Amended Complaint alleges that Defendant Desiderio had at least three different roles relevant to the instant suit. He allegedly was: (1) a Planning Board Member, (2) Mayor of Sea Isle City, and (3) a principal of Defendants Sea Isle Inn and Kix McNutley's.

Once all plans were approved, it appears the next step in the process was the issuance of construction permits. While the permits for the residential units were allegedly issued on April 8, 2015, "the necessary permits for the first floor restaurant space" were allegedly delayed by several months. (Amend. Compl. ¶ 40) Specifically, the Amended Complaint alleges that Defendant "Sea Isle Construction Official / Zoning Officer" Cornelius R. Byrne, "refused to issue" the restaurant permits (id.), and caused delays by allegedly raising "unnecessary" questions about "the intended use of the residential units," as well as "the administrative approvals already granted to Plaintiff." (Id. ¶¶ 40-43) Plaintiff contends that these questions were "subterfuge" for the real reason for the delay: Defendant Desiderio and /or Defendant Savastano allegedly "order[ed]", or "directed", Defendant Byrne to delay and / or refuse to issue the permits. (Id. ¶¶ 40, 60, 61)

On September 17, 2015, Defendant Sea Isle City Solicitor Defendant Paul J. Baldini, Esq.[3] wrote a four-page letter to Defendant Byrne which states in relevant part,

> Dear Neil: . . . By way of e-mail dated August 19, 2015 you have requested a legal opinion to determine whether the project as being developed [by Plaintiff] meets the intent of the approvals the project received in May of 2010 and otherwise comports with Sea Isle City Ordinances.

---

[3] The Amended Complaint alleges that Defendant Baldini is the attorney for Sea Isle City, and not the Planning Board, which allegedly has "its own solicitor." (Amend. Compl. ¶ 62)

(Amend. Compl. Ex. O)  After setting forth a legal analysis, the letter concludes that the project significantly deviates from the Planning Board approvals[4], and that such "changes . . . are not de minimus in nature and cannot be implemented without review by the full Planning Board after appropriate application to amend the approved site plan."  (Id.)  Allegedly "as a result of" this letter, "[on] September 23, 2015 [Defendant] Byrne . . . issued . . . a Stop Work Order to Plaintiff" which caused further construction delay.  (Amend. Compl. ¶ 45)

On October 1, 2015, Plaintiff filed a complaint in New Jersey Superior Court against the City of Sea Isle City "challenging the City of Sea Isle Construction Official / Zoning Officer's issuance of a Stop Work Order and denial of building permits related to a commercial space owner by [Plaintiff]."  (Amend. Compl. Ex. B)

"Plaintiff's project was completed in late May 2016." (Amend. Compl. ¶ 54)

On August 2, 2016, the Superior Court held

> that the Construction Official / Zoning Officer's revocation and denial of the permits . . . were arbitrary, capricious and unreasonable.  The court holds that [Plaintiff] is entitled to any and all permits necessary to construct the Property consistent with the approvals granted under the Original Plan, Revised Plan, and Revised Fit-Out Plan.

---

[4]  The letter states that the Planning Board "approved residential units in the customary normal meaning of that term and not guesthouse, tourist house or motel use."  (Amend. Compl. Ex. O)

(Id.)

Plaintiff contends that the delays caused by the allegedly improper denial of permits and Stop Work Order caused Plaintiff to incur specific additional costs[5] and caused Plaintiff to "default" on its lease for the first floor restaurant space because Plaintiff could not deliver possession to the lessee by the date set in the lease.[6] (Amend. Compl. ¶ 48)

Plaintiff further contends that Defendant Desiderio directed the delays because Plaintiff's business and Defendant Desiderio's businesses, Defendants Kix McNutley's and Sea Isle Inn, "are direct competitors in the restaurant and hospitality industry." (Amend. Compl. ¶ 58)

The Amended Complaint asserts the following claims against the Sea Isle City Defendants[7] only: Count 1-- violations of Plaintiff's substantive due process rights, equal protection rights, and "right to use and enjoy its property" (Amend. Compl. ¶ 83), under the New Jersey Constitution; Count 2 -- violation of

---

[5] The Amended Complaint alleges, among other things, that Plaintiff "incur[red]: (1) interest on loans; (2) carrying costs; (3) lost rental income for residential units; (4) lost income from banquets and weddings; and (5) lost lease payments." (Amend. Compl. ¶ 52)

[6] The Amended Complaint does not allege whether the lessee considered the default a material breach of the lease; nor does the Amended Complaint allege whether Plaintiff was able to satisfactorily cure the default.

[7] The Sea Isle Defendants do not include the Restaurant Defendants.

Plaintiff's federal right to substantive due process pursuant to 42 U.S.C. § 1983; Count 3 -- violation of Plaintiff's federal right to equal protection pursuant to 42 U.S.C. § 1983; Count 4 -- "civil conspiracy under 42 U.S.C. § 1983 and § 1985"; and Count 11 -- negligence.  Against all Defendants the Amended Complaint asserts: Count 5 -- tortious interference with prospective economic advantage; Count 6 -- conspiracy; Count 7 -- violation of the New Jersey Antitrust Act, N.J.S.A. § 56:9-3; Count 8 -- violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; Count 9 -- unfair competition; and Count 10 – "abuse of process."

## II.  MOTION TO DISMISS STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 663.  "[A]n unadorned, the defendant-unlawfully-harmed me accusation" does not suffice to survive a motion to dismiss.  Id. at 678.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." _Twombly_, 550 U.S. at 555 (quoting _Papasan v. Allain_, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, a district should conduct a three-part analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Third, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

_Malleus v. George_, 641 F.3d 560, 563 (3d Cir. 2011) (internal citations, quotations, and modifications omitted) (quoting _Iqbal_, 556 U.S. at 675, 679).

Rule 12(b)(6) requires the district court to "accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." _Bistrian_, 696 F.3d at 358 n. 1. Only the allegations in the complaint and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. _Oshiver v. Levin, Fishbein, Sedran & Berman_, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citing _Chester Cty. Intermediate Unit. v. Pennsylvania Blue Shield_, 896 F.2d 808, 812 (3d Cir. 1990)). A court may also "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the

document." Pension Ben. Guar. Corp. v. White Consol. Indus.,
Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**III. ANALYSIS**

   **A.  The Sea Isle Defendants' Motion to Dismiss[8]**

   Substantive due process

   Defendants argue that the factual allegations of the Amended
Complaint, even if taken as true, do not meet the "shocks the
conscience" standard applied to substantive due process claims in
the land use context.  See Eichenlaub v. Twp. of Indiana, 385 F.3d
274, 285 (3d Cir. 2004) ("The District Court properly held . . .
that whether a zoning official's actions or inactions violate due
process is determined by utilizing a 'shocks the conscience'
test.").  Plaintiff asserts that the factual allegations are
sufficient to plausibly support a conclusion that Defendant
Desiderio engaged in self-dealing which, Plaintiff contends, does
meet the shocks the conscience standard.

   Defendants correctly observe that the shocks the conscience
"test is designed to avoid converting federal courts into super
zoning tribunals.  What 'shocks the conscience' is only the most
egregious official conduct."  Eichenlaub, 385 F.3d at 285
(internal citations and quotations omitted).  Plaintiff, also

_____

   [8] Although "the Sea Isle Defendants" includes Defendant
Baldini, Baldini has retained separate counsel and has filed his
own brief in support of his Motion to Dismiss.  The Court's
analysis in Section III. A. of this Opinion applies to Defendant
Baldini, except where otherwise indicated, and subject to the
separate analysis set forth in Section III. B.

relying on Eichenlaub, argues that the facts alleged support a plausible conclusion that Defendant Desiderio engaged in self-dealing, which Plaintiff contends, amounts to "gross misconduct" supporting its substantive due process claim. Id.

The Court holds that the present factual allegations are insufficient to "'nudge [the] claim[] across the line from conceivable to plausible.'" Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly). Plaintiff asks this Court to draw the inference that Defendant Desiderio engaged in self-dealing based on two sentences of the Amended Complaint:

> 22. During the May 10, 2010 hearing, Planning Board Member, Mayor Desiderio, recused himself from Plaintiff's application and abstained from voting, presumably recognizing the conflict in that his businesses, Sea Isle Inn and Kix McNutley's, are competitors of Plaintiff. (Exhibit D).

> 23. Despite his public recusal and abstention, Mayor Desiderio stayed involved behind the scenes in undermining Plaintiff's project to favor his own personal business interests.

(Amend. Compl. ¶ 22-23)

The Court finds several deficiencies in these allegations. First, it is important to note that the allegations are based on Exhibit D to the Amended Complaint, the Memorializing Resolution of the Planning Board, which only states, "Board Member Mayor Desiderio recused himself from the Application and stepped down from the dais," and records that Desiderio "abstain[ed]" from voting on the application. (Amend Compl. Ex. D) Thus, the Amended Complaint pleads no facts suggesting why Defendant

10

Desiderio recused and abstained from voting, and none are

contained in the Memorializing Resolution.  Plaintiff invites the

Court to infer that the reason was Defendant Desiderio's interest

in Kix McNutley's and Sea Isle Inn, but the allegations of the

Amended Complaint itself demonstrate such an inference would be

nothing more than speculation at this point: "Mayor Desiderio,

recused himself from Plaintiff's application and abstained from

voting, <u>presumably</u> recognizing the conflict . . . ."  (Amend.

Compl. ¶ 22; emphasis added)

Second, the Amended Complaint fails to plead sufficient facts

that would plausibly support a conclusion that Mayor Desiderio

did, indeed, have a "conflict."  As discussed infra with respect

to the antitrust claims, the Amended Complaint fails to plead

facts suggesting that Plaintiff is a competitor of Kix McNutley's

and Sea Isle Inn, or even more basically, how the Restaurant

Defendants compare with Plaintiff.[9]  Absent facts suggesting

competition between the Restaurant Defendants and Plaintiff, the

Court cannot plausibly conclude that Defendant Desiderio had a

conflict, and absent a conflict, the Court cannot draw the

conclusion that there was self-dealing.

Third, exacerbating the uncertainty surrounding the factual

allegations is the alleged fact, supported by the Memorializing

---

[9]  Also, according to Plaintiff, the Restaurant Defendants and
Plaintiff are three of at least 15 bars and / or restaurants in
Sea Isle City and part of neighboring Avalon.  (Amend. Compl. ¶ 1
and Ex. A)

Resolution, that Plaintiff was not the Applicant whose application Defendant Desiderio abstained from voting on.[10]  This alleged fact only raises additional questions concerning both the reason for Defendant Desiderio's recusal and the existence of a conflict.

Lastly, the allegation that Defendant Desiderio "stayed involved behind the scenes" (Amend. Compl. ¶ 23) is vague, and its significance, if any, in the substantive due process analysis is unclear.  The Court cannot discern whether Plaintiff contends that there was anything improper or wrongful about "staying involved." It does not necessarily follow that a Planning Board Member who recuses from a vote on an application must have no further "involvement" with an application once it has been approved, particularly in this case, where the Applicant and the Plaintiff are apparently two different entities.  If there are rules prohibiting such "involvement," Plaintiff has not pled them in the Amended Complaint.

Thus, a close reading of the Amended Complaint reveals that Plaintiff's self-dealing theory is actually based on only one alleged fact (as opposed to speculation or bald conclusions): Defendant Desiderio recused himself from an application for Final Site Plan approval related to property in which Plaintiff now has an interest.  This is insufficient under Twombly and Iqbal to support a conclusion that Defendant Desiderio engaged in self-

_____

[10]  The applicant was 87th Street Development, LLC.  (Amend. Compl. Ex. D)

dealing.  Accordingly, the Sea Isle Defendants' Motion to Dismiss will be granted as to the substantive due process claim.

Equal protection

Defendants move to dismiss arguing that Plaintiff has failed to allege a comparator necessary to plausibly plead Plaintiff's class-of-one equal protection claim.  In response, Plaintiff asserts that it has sufficiently identified similarly situated comparators, relying on paragraphs 68 and 69 of the Amended Complaint:

> 68. . . . [T]he Sea Isle Defendants have arbitrarily, irrationally and unreasonably engaged in intentional and disparate treatment of Plaintiff by refusing to issue approvals based on an absurd contention that Plaintiff's residential units are a commercial use solely because they may be rented for short-terms. That outrageous position is contrary to, and inconsistent with, the very nature and use of the majority of similarly situated residential properties in Sea Isle and other shore communities.  This contention is supported by documents obtained via OPRA requests.  They are too voluminous to attach to this Complaint, but will be supplied on request.
>
> 69. During times relevant to this matter, there were no violations issued to any other similarly situated properties aside from Plaintiff for allegedly violating the approved residential occupancy of R-2 or approved zoning use by renting out the property with a rental permit.

The Court holds that these allegations are insufficient.  The allegation that the relevant comparator is "similarly situated residential properties" is both conclusory and overbroad.  The Amended Complaint fails to allege how the residential properties

13

are similarly situated to Plaintiff.[11]  Is Plaintiff alleging the

properties are similarly situated simply because they are

residential properties?  The allegations of the Amended Complaint

do not answer this question.  Moreover, all residential properties

in Sea Isle City cannot be the relevant comparator in view of the

facts of this case.  A single-family house which is never rented

out is a "residential property" but would not be a relevant

comparator to Plaintiff, which allegedly rents out 13 individual

units on a short term basis.  See generally Startzell v. City of

Philadelphia, 533 F. 183, 203 (3d Cir. 2008) ("similarly situated"

comparators must be "alike in all relevant respects.").[12]

Plaintiff's assertion in the Amended Complaint, and in its

opposition brief, that Plaintiff will provide documents that will

identify the relevant comparators does not salvage the equal

_____

[11]  Accord. Zitter v. Petruccelli, 213 F. Supp. 3d 698, 710
(D.N.J. 2016) (holding insufficient the factual allegations of
plaintiff's class-of-one equal protection claim because "Plaintiff
[] fails to allege sufficient facts showing how th[e] [alleged
comparator] was similarly situated."); see also, Ragland v.
Lanigan, No. 14-0458, 2014 WL 2534928, at *5 (D.N.J. June 4, 2014)
("Plaintiff's sole allegation in the complaint with respect to
this claim is that he was treated differently than similarly
situated [individuals].  This amounts to nothing more than a
thread-bare recital of the first element of stating a 'class-of-
one' equal protection claim without any further factual
allegations.  This is insufficient to state an equal protection
claim.").

[12]  Defendants assert that the relevant comparator must at
least be a mixed use property, not an exclusively residential
property.  The Court does not rule on what the relevant comparator
is.  Rather the Court holds that Plaintiff has not adequately
identified what it contends is the relevant comparator.

protection claim.  <u>Twombly</u> and <u>Iqbal</u> require that a pleading

contain sufficient factual allegations to raise a claim to relief

above the speculative level.  Accordingly, Plaintiff must include

the necessary factual allegations in the pleading, rather than

provide such information at a later time.  <u>Cf.</u> <u>Johnson v.</u>

<u>Gloucester Cty. Improvement Auth.</u>, No. CV 16-8422 (RMB/AMD), 2017

WL 6539235, at *12 (D.N.J. Dec. 21, 2017) ("Plaintiffs cannot

sustain their burden of pleading facts by stating that such facts

will be provided in witness testimony at a later time. . . . The

time is now-- not in discovery, and the place is in the pleading--

not in a deposition transcript.").

Defendants' Motion to Dismiss the equal protection claim will

be granted.

<u>Claims under the New Jersey State Constitution</u>

The parties make no independent arguments concerning

Plaintiff's claims under the New Jersey State Constitution.

Moreover, Plaintiff states that its claims are co-extensive with

the federal constitutional claims.  (Dkt No. 51, Opposition Brief,

p. 18)  Accordingly, the Motion to Dismiss will be granted as to

the New Jersey substantive due process claim and the New Jersey

equal protection claim.

<u>Tortious interference</u>

The Sea Isle Defendants assert that the Amended Complaint

fails to allege all of the elements of a claim for tortious

interference with economic advantage under New Jersey law.

Tortious interference with economic advantage has four elements: (1) "a prospective economic or contractual relationship"; (2) interference "inflicted intentionally and without justification or excuse"; (3) "causation"; and (4) "damages." <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 751, 759 (1989).

Defendants challenge the second prong only, asserting two arguments.

First, Defendants argue that they could not have intentionally interfered with a contract about which they did not know. The Court rejects this argument. The Court is not aware of any requirement under New Jersey law that liability for tortious interference with prospective economic advantage requires specific knowledge of a specific contract alleged to have been disrupted by a defendant's actions.[13] The Amended Complaint alleges sufficient facts to plausibly support an inference that Defendants, by virtue of the Planning Board proceedings, at a minimum knew that Plaintiff intended to open a restaurant in the subject property, and that such an enterprise likely would involve leasing the

---

[13] Contrary to Defendants' assertion, <u>Major League Baseball Promotion Corp. v. Colour-Tex, Inc.</u>, 729 F. Supp. 1035, 1051 (D.N.J. 1990) does not stand for the broad proposition that specific knowledge of a particular contract is required. In <u>Colour-Tex</u>, the defendant not only knew "nothing about" the subcontract alleged to be interfered with, the defendant also had no reason to know about the subcontract because the contract at issue expressly forbid subcontracts without the licensor's written approval, which approval was not sought. 729 F. Supp. at 1051-53. The instant case is distinguishable because Plaintiff pleads facts that would plausibly support the conclusion that Defendants did have reason to know of the lease at issue.

restaurant space to a third-party.  Thus, the Amended Complaint
plausibly pleads that Defendants acted with knowledge that their
actions would likely interfere with Plaintiff's economic advantage
related to the restaurant space and that Defendants intended that
result.  See Printing Mart, 116 N.J. at 756 (holding the intent
prong sufficiently pled because "[t]he clear inference, or at the
very least an allowable one, is that [defendant] intended that
[plaintiff] lose the job and that his actions were calculated to
produce that result."); accord. Restatement (Second) of Torts § 8A
("The word 'intent' is used throughout the Restatement of this
Subject to denote that the actor desires to cause consequences of
his act, or that he believes that the consequences are
substantially certain to result from it.").

Second, Defendants also argue, in conclusory fashion, that
Plaintiff cannot establish that Defendants acted without
justification.  However, the alleged fact that Plaintiff prevailed
in the Superior Court action challenging the Stop Work Order
plausibly supports a conclusion, at the pleadings stage, that
Defendants acted without justification.

Accordingly, Defendants' Motion to Dismiss the tortious
interference claim will be denied.

Unfair competition

Defendants move to dismiss the unfair competition claim
asserting that "Plaintiff has not alleged that Defendants
misappropriated Plaintiff's [intellectual] property" (Dkt No. 45,

17

Sea Isle Defendants' Moving Brief, p. 40; see also Dkt No. 46,

Baldini's Moving Brief, p. 41-42), therefore the unfair

competition claim fails.  Plaintiff argues that unfair competition

claims under New Jersey common law are not limited to alleged

misappropriation of intellectual property, asserting that "'the

concept [of unfair competition] is deemed as flexible and elastic

as the evolving standards of commercial morality demand.'"

(Opposition Brief, p. 40; quoting Ryan v. Carmona Bolen Home for

Funerals, 341 N.J. Super. 87, 92 (App. Div. 2001)).

Defendants' argument appears to assume that Plaintiff asserts

a statutory claim for unfair competition pursuant to N.J.S.A.

56:4-1 to -2, however Plaintiff is clear that it asserts an unfair

competition claim under New Jersey common law, which is a distinct

cause of action.  Nonetheless, Plaintiff has not stated a claim

for common law unfair competition.  As District Judge Cavanaugh

has comprehensively stated,

> the common law of unfair competition is 'not completely
> boundless.'  Reckitt Benckiser Inc. v. Tris Pharma,
> Inc., 2011 U.S. Dist. LEXIS 19713, 25-26, 2011 WL 773034
> (D.N.J. Feb. 28, 2011).  'The law of unfair competition
> has its roots in the common-law tort of deceit: its
> general concern is with protecting consumers from
> confusion as to source.'  Bonito Boats, Inc. v. Thunder
> Craft Boats, Inc., 489 U.S. 141, 157, 109 S.Ct. 971,
> 103 L.Ed.2d 118, (1989).  Indeed, it has been stated
> that '[t]he essence of unfair competition is the
> practice of palming off one's product as that of
> another.' Squeezit Corp. v. Plastic Dispensers, 31 N.J.
> Super. 217, 106 A.2d 322, 325 (App. Div. 1954).  Most
> cases of unfair competition encompass one of two
> business torts: the passing off of one's goods or
> services as those of another and unprivileged imitation,
> SK & F, Co. v. Permo Pharm. Lab., Inc., 625 F.2d 1055,

1062 (3d Cir. 1980). Thus, '[a]lthough it is impossible to categorize all acts which constitute unfair competition, there are a few fundamental elements that are definite. In essence ... it consists of the misappropriation of one's property by another-- property which has some sort of commercial or pecuniary value.' N.J. Optometric Ass'n 365 A.2d at 965 (citations omitted). 'The judicial goal should be to discourage, or prohibit the use of misleading or deceptive practices which renders competition unfair.' Ryan v. Carmona Bolen Home for Funerals, 341 N.J. Super. 87, 92, 775 A.2d 92 (App. Div. 2001).

Aetrex Worldwide, Inc. v. Sourcing for You, Ltd., 2013 WL 1680258, at *6 (D.N.J. Apr. 16, 2013).

The Amended Complaint pleads no facts suggesting that any consumer or member of the general public was misled or deceived by Defendants' alleged actions, nor even that Defendants attempted to mislead or deceive such people. The Amended Complaint also does not allege any "passing off" or "unprivileged imitation." SK & F, Co., 625 F.2d at 1062.

Accordingly, Defendants' Motion to Dismiss the common law unfair competition claim will be granted.

Antitrust claims

Defendant Baldini asserts that the Amended Complaint fails to adequately plead facts establishing the relevant market for both the Sherman Act claim of the New Jersey Antitrust Act claim. Under both statutes[14], Plaintiff must sufficiently plead the

---

[14]  The parties employ the same legal analysis for both claims.  See State v. Lawn King, Inc., 84 N.J. 179, 192, (1980) ("the New Jersey [antitrust] act is to be construed 'in harmony with ruling judicial interpretations of comparable Federal

relevant market in terms of product / service and geography. Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 443 (3d Cir. 1997); see also Andela v. Am. Ass'n For Cancer Research, 389 F. App'x 137, 140-41 (3d Cir. 2010) ("A plaintiff asserting a [Sherman Act] Section 1 claim . . . must allege four elements: (1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted actions were illegal; and (4) that it was injured as a proximate result of the concerted action.") (citing Howard Hess Dental Labs. v. Dentsply Int'l, 602 F.3d 237, 253 (3d Cir. 2010)).

In opposition, Plaintiff relies on Paragraph 58 of the Amended Complaint which alleges, "Kix McNutley's and Sea Isle Inn, owned by Sea Isle's Mayor Leonard Desiderio, are located twenty-three blocks away from Plaintiff's project in Sea Isle and are direct competitors in the restaurant and hospitality industry." Similarly, Plaintiff's opposition brief asserts that "Plaintiff has pled [that Defendants' actions] produced anticompetitive effects within the restaurant and hospitality industry and relevant geographic markets." (Opposition Brief, p. 42) Such bare allegations are impermissibly conclusory.

---

antitrust statutes and to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it.'") (quoting N.J.S.A. § 56:9-18).

First, Plaintiff may be reasonably expected to plead, at a minimum, what type of establishments Kix McNulty's and Sea Isle Inn are, and how they compare with Plaintiff's establishment. At present, the Amended Complaint pleads that Plaintiff operates a mixed-use facility which includes residential units and a restaurant. The Amended Complaint, however, does not allege any facts which would allow the Court to compare the services that Kix McNutly's or Sea Isle Inn provide. See, e.g., Queen City Pizza, 124 F.3d at 436 ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.").

Second, no geographic market is identified with any clarity. Paragraph 58 of Amended Complaint could be interpreted to allege that the relevant geographic market is a specific 23 blocks within Sea Isle City, or it could be interpreted as alleging that all of Sea Isle City is the relevant geographic market. To confuse matters further, Paragraph 58 cites Exhibit A of the Amended Complaint, which is a map purporting to be "a map of [15] bars" in both Sea Isle City and the neighboring municipality of Avalon. (Amend. Compl. ¶ 1)

The Court holds that Plaintiff has failed to plead sufficient facts identifying the relevant service and geographic markets. Accordingly, Defendants' Motion to Dismiss the antitrust claims will be granted.[15]

## Abuse of process

Defendants assert that Plaintiff has failed to state a claim for abuse of process because "none of the alleged acts of Defendants utilized the judicial process." (Dkt No. 45, Sea Isle Defendants' Moving Brief, p. 41; see also Dkt No. 46, Baldini Moving Brief, p. 42-43) The Court agrees.

"The 'process' that must have been abused includes the summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders. The typical abuse of process claim involves leveraging some attachment process or complaint in order to achieve some other end." Stolinski v. Pennypacker, 772 F. Supp. 2d 626, 645 (D.N.J. 2011) (emphasis added) (citing Wozniak v. Pennella, 373 N.J. Super. 445 (App. Div. 2004) and Ruberton v. Gabage, 280 N.J. Super. 125 (App. Div. 1995)). New Jersey law is clear that the "process" which serves as the basis for an abuse of process claim is limited to judicial process issued by a court:

> 'Process,' . . . refers to the abuse of procedural methods used by a court to 'acquire or exercise its

---

[15] In light of this disposition, the Court does not address at this time Defendants' argument that the antitrust claims are barred by the Parker doctrine, Parker v. Brown, 317 U.S. 341 (1943).

jurisdiction over a person or over specific property.' Black's Law Dictionary 1084 (5th ed. 1979). This use of the term "process" includes the 'summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders[.]' Webster's Ninth New Collegiate Dictionary 937 (1986). For example, Prosser & Keeton notes that: 'Many kinds of process have lent themselves to extortion, including attachment, execution, garnishment, sequestration proceedings, arrest of the person and criminal prosecution and even such infrequent cases as the use of a subpoena for the collection of a debt.' § 121 at 899. . . . This narrow use of 'process' must be distinguished from the general use, as being 'the whole course of proceedings in a legal action.' Webster's Ninth New Collegiate Dictionary at 937.

Ruberton v. Gabage, 280 N.J. Super. 125, 131 (App. Div. 1995)

(emphasis added); see also Simone v. Golden Nugget Hotel & Casino,

844 F.2d 1031, 1037 (3d Cir. 1988) ("A showing of some coercive or

illegitimate use of the judicial process is necessary to a claim

that there has been an abuse of the process.") (emphasis added;

applying New Jersey law); Avaya, Inc. v. Cisco Sys., Inc., 2012

WL 2065536, at *3 (D.N.J. June 7, 2012) ("'Process,' which is

defined narrowly in the context of the tort of abuse of process,

refers not to 'all proceedings in a legal action,' but rather to

'certain products of litigation that a court issues, such as a

summons, mandate, or writ used by a court to compel the appearance

of the defendant in a legal action or compliance with its

orders.'") (emphasis added) (quoting Jewett v. IDT Corp., 2007

U.S. Dist. LEXIS 67284, at *7 (D.N.J. Sept. 11, 2007)); cf.

Tedards v. Auty, 232 N.J. Super. 541, 549 (App. Div. 1989)

(distinguishing the tort of malicious use of process from the tort

23

of malicious abuse of process, but discussing both torts in terms

of "court process").[16]

---

[16] See generally Dobratz v. Krier, 808 N.W.2d 756, 2011 WL
5867067 at *4 (Iowa Ct. App. 2011) ("During oral arguments,
plaintiffs acknowledged Rhode Island is the only state supreme
court to expand the abuse of process tort to administrative
proceedings.  We concur with the opinions expressed by the clear
majority of the courts and decline plaintiffs' request to follow
Rhode Island and expand the tort of abuse of process to include
administrative proceedings.  An actionable tort for abuse of
process does not exist in Iowa unless there is some improper use
of the process of the court."); Bloom v. Arnold, 45 Kan. App. 2d
225, 232 (2011) ("Based on the long-standing definition of the
term 'legal process' in Kansas, and consistent with the majority
of those jurisdictions deciding the issue, we conclude as a matter
of first impression in Kansas that the term 'process' in an abuse
of process claim limits the claim of abuse to those proceedings
that invoke the aid of judicial process.  In other words, an abuse
of process claim based on improper use of an administrative or
other nonjudicial proceeding is insufficient as a matter of law to
support such a claim."); Larobina v. McDonald, 274 Conn. 394,
406-07 (2005) ("All of these courts agree, however, that, although
the definition of process may be broad enough to cover a wide
range of judicial procedures, to prevail on an abuse of process
claim, the plaintiff must establish that the defendant used a
judicial process for an improper purpose. . . . In the present
case, most of the acts alleged by the plaintiff in support of his
abuse of process claim did not involve a judicial procedure and,
therefore, as a matter of law, do not support an abuse of process
claim.")(collecting authorities from Montana, Arizona, California,
Ohio and Wyoming); see also, Estate of Tucker ex rel. Tucker v.
Interscope Records, Inc., 515 F.3d 1019, 1037 (9th Cir. 2008)
("under well-established California law, the tort of abuse of
process requires misuse of a judicial process. . . . Misuse of an
administrative proceeding-- even one that is quasi-judicial-- does
not support a claim for abuse of process."); State Farm Mut. Auto.
Ins. Co. v. Universal Rehab Servs., Inc., 2017 WL 1304984, at *9
(E.D. Mich. Mar. 30, 2017), report and recommendation adopted,
2017 WL 1404545 (E.D. Mich. Apr. 19, 2017)("As defined by Black's
Law Dictionary . . . an abuse of process requires the 'improper
and tortious use of a legitimately issued court process....'
(Emphasis added). If anything is clear, as long ago noted by
Professor Prosser, 'the judicial process must somehow be
involved.' . . . This is why a repairman's notice of lien or a
threat that process will be invoked does not satisfy the 'process'
element of the tort, which requires something more formal like

Plaintiff's abuse of process claim is not premised on any process issued by a court; the Stop Work Order was allegedly issued by Defendant Zoning Officer Byrne in connection with proceedings before the Sea Isle City Planning Board. Defendant Byrne is not a judicial officer and the Planning Board is not a court. Therefore the abuse of process claim fails as a matter of law.

Defendants' Motion to Dismiss the abuse of process claim will be granted.

<u>Negligence</u>

The very last count of the 11-count, 141-paragraph, Amended Complaint is entitled "Negligence." In support of this Count, the Amended Complaint merely states, "Baldini, Byrne, Savastano, Desiderio, and Sea Isle's acts constitute negligence." (Amend. Compl. ¶ 140) The Court will not speculate as to Plaintiff's theory of liability supporting this claim. The allegations fail to put Defendants on notice as to the nature of the claim and therefore the negligence claim fails to comply with Fed. R. Civ. P. 8.

---

attachment, execution, garnishment, arrest, or sequestration proceedings. . . . As the Michigan Supreme Court noted . . . '[a]buse of process is the wrongful use of the process of a court.'") (internal citations omitted); <u>Cooper v. Escambia Cty. Comm'n</u>, 2012 WL 253297, at *1-2 (S.D. Ala. Jan. 26, 2012) ("the Court predicts that the Alabama Supreme Court would not recognize a claim for abuse of administrative process. . . . the vast majority of jurisdictions decline to recognize abuse of process in nonjudicial proceedings.").

Defendants' Motion to Dismiss the negligence claim will be granted.

New Jersey Tort Claims Act ("TCA") Immunity

Defendants assert that they are immune from the state law claims pursuant to N.J.S.A. §§ 59:2-5 and 59:3-6 which provide,

> A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.

> A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where he is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.

In response, Plaintiff contends that a decision concerning TCA immunity at this stage of the case would be premature.

The Court agrees that the immunity issue is more appropriately addressed at a later stage of this case. Whether the issuance of the Stop Work Order or the delays leading up to the order were "authorized by law," and whether each Defendant is entitled to immunity, are not issues that may be resolved on the allegations of the Amended Complaint alone. Accordingly, Defendants' Motion to Dismiss based on TCA immunity will be denied without prejudice.

Punitive damages

Sea Isle City moves to dismiss, arguing in one sentence, "Plaintiff's punitive damages claims against Sea Isle City are barred by the Tort Claims Act, N.J.S.A. 59:9-2(c) and under *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)." (Moving Brief, p. 45)

*City of Newport* "hold[s] that a municipality is immune from punitive damages under 42 U.S.C. § 1983." 453 U.S. 247, 271 (1981); see also *Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011) ("'a municipality is immune from punitive damages under 42 U.S.C. § 1983[.]'") (quoting *City of Newport*). Accordingly, the Motion to Dismiss the punitive damages claims associated with the § 1983 claims against Sea Isle City will be granted.

Similarly, "no claim for punitive damages is permitted against public entities [pursuant to] N.J.S.A. 59:9-2(c)." *Henebema v. S. Jersey Transp. Auth.*, 430 N.J. Super. 485, 513, (App. Div. 2013), aff'd, 219 N.J. 481 (2014). Plaintiff implicitly concedes this point, arguing only that "this argument is not applicable to public employees." (Opposition Brief, p. 43). Accordingly, the Motion to Dismiss the punitive damages claims associated with the state law claims against Sea Isle City will be granted.

## Conspiracy claims

The Amended Complaint asserts three types of conspiracy claims: (1) "statutory" conspiracy pursuant to 42 U.S.C. §

27

1985(3); (2) federal common law conspiracy as applied to the §

1983 claims; and (3) New Jersey common law conspiracy as applied

to the state law claims.[17]  The Court first addresses the statutory

conspiracy claim before turning to the common law claims.

To state a claim under § 1985(3) "a plaintiff must allege

both that the conspiracy was motivated by discriminatory animus

against an identifiable class and that the discrimination against

the identifiable class was invidious."  Farber v. City of

Paterson, 440 F.3d 131, 135 (3d Cir. 2006).  "[A] § 1985(3)

claimant must allege 'some racial, or perhaps otherwise class-

based, invidiously discriminatory animus behind the conspirators'

action.'"  Id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102

(1971)).  The Amended Complaint fails to allege any racial or

class-based discriminatory animus; and further, Plaintiff's equal

protection claim is based on a class-of-one theory, which as a

matter of law, cannot serve as the basis for a § 1985(3)

conspiracy claim.  McCleester v. Dep't of Labor & Indus., No.

CIV.A. 3:06-120, 2007 WL 2071616, at *15 (W.D. Pa. July 16, 2007)

("Merely because Plaintiff constitutes a class of one for purposes

of the Fourteenth Amendment does not entitle him to the safeguards

codified in § 1985.  Because of that statute's unique history,

courts are reluctant to transform it into a "'general federal tort

---

[17]  The Court's discussion of the conspiracy claims excludes
the federal and state antitrust claims which independently require
proof of concerted action.  See supra at p. 19-20.

law'" and vigorously enforce the requirement that § 1985(3)

plaintiffs allege some "'racial, or perhaps otherwise class-based,

invidiously discriminatory animus behind the conspirators'

action.'") (quoting Farber, and collecting cases).[18]  Accordingly,

Defendants' Motion to Dismiss the § 1985(3) claim will be granted.

With respect to the federal conspiracy claims, Defendants

argue only that the claims should be dismissed for failure to

state a claim for an underlying constitutional or common law tort.

As set forth above, none of the federal claims survive the instant

motion to dismiss; accordingly the federal common law conspiracy

claim will also be dismissed.  However, the Amended Complaint

sufficiently states a claim for common law tortious interference

with prospective economic advantage.  Accordingly, the common law

conspiracy claim based on this underlying tort claim shall not be

dismissed.

---

[18]  See also, Thorncreek Apartments I, LLC v. Vill. of Park
Forest, No. 08 C 1225, 2015 WL 2444498, at *2 (N.D. Ill. May 20,
2015) ("settled law . . . holds that the equal protection
violation necessary to predicate a § 1985(3) claim must be a race-
based or other class-based violation, not a class-of-one
violation.") (collecting cases); Welsh v. Male, No. 05-CV-6838,
2007 WL 906182, at *4 (E.D. Pa. Mar. 22, 2007) ("While plaintiff
may and does assert an equal protection claim based on a 'class of
one,' his Section 1985(3) claim fails because a 'class of one' is
not the type of group that could legitimately be subjected to
class-based animus."); Cataldo v. Moses, No. CIV.A.02-2588, 2005
WL 705359, at *19 (D.N.J. Mar. 29, 2005) ("various courts have
held that plaintiff's 'class of one' theory cannot support a claim
under Section 1985(3).") (Schwartz, U.S.M.J., Report and
Recommendation).

**B. <u>Baldini's Motion to Dismiss</u>**

To summarize, as set forth in Section III. A. supra, the only claims that survive the other Sea Isle Defendants' Motion to Dismiss are the tortious interference with contract claim and the attendant common law conspiracy claim. The Court's analysis and conclusion as to the claims asserted against Defendant Baldini is the same, except as to the common law conspiracy claim, which will be dismissed for the reasons discussed below. Additionally, the Court holds the following as to Defendant Baldini specifically.

<u>Causation</u>

A recurring theme in Defendndant Baldini's papers is this: "Mr. Baldini [as City Solicitor] merely prepared a legal opinion. He did not issue a stop work order . . . . [He] did not issue, deny, suspend or revoke a permit issued to [P]laintiff." (Dkt No. 46, Moving Brief, p. 34, 48) While Baldini does not specifically couch this argument in terms of causation, the argument does implicate significant causation concerns.

Plaintiff complains of injuries it sustained from delays in the permitting process and the Stop Work Order, yet the Amended Complaint specifically pleads that Defendant Baldini did not have "authority" to make such decisions (Amend. Compl. ¶ 44), and further, that Baldini did not even work for the Planning Board. (Id. at ¶ 15, 62) Indeed, the Amended Complaint specifically alleges that it was Defendant Byrne who delayed the permits, and those delays allegedly occurred in July and August 2015 (Id. at ¶¶

40-43)-- i.e., before Defendant Baldini sent his opinion letter in
September 2015. (Id. at ¶ 44) Moreover, while the Stop Work
Order issued shortly after the date of Defendant Baldini's letter,
the Amended Complaint pleads that it was Defendant Byrne who made
the decision to issue the Stop Work Order. (Id. ¶ 45) Thus, the
allegations of the Amended Complaint do lead the Court to question
whether Defendant Baldini's alleged actions caused Plaintiff's
alleged injuries.

However, because the Amended Complaint also pleads that Mr.
Byrne issued the Stop Work Order "as a result of [Defendant]
Baldini's improper legal opinion" (Id. ¶ 45), and the parties have
not briefed the causation issue, the Court does not decide the
issue at this time. In the event that summary judgment motions
are filed in this case, the parties may wish to brief whether
Defendant Byrne's alleged decision to issue the Stop Work Order
was the superseding cause of Plaintiff's alleged injuries. Cf.
Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) ("an
intervening act of a third party, which actively operates to
produce harm after the first person's wrongful act has been
committed, is a superseding cause which prevents the first person
from being liable for the harm which his antecedent wrongful act
was a substantial factor in bringing about. . . . This concept has
been recognized in cases such as the one before us. Courts have

held that, under certain circumstances, the actions of a judicial officer may sever the chain of causation.").[19]

New Jersey common law conspiracy claim

Defendant Baldini argues "Plaintiff sets forth implausible allegations supported by gross speculation that Mr. Baldini was involved in some sort of conspiracy to harm its business interests as a result of writing a legal opinion." (Dkt No. 46, Moving Brief, p. 41) Plaintiff's opposition completely ignores Defendant Baldini's argument, and effectively demonstrates the accuracy of the argument. Plaintiff states "Defendants entered into an unlawful scheme to delay, overturn approvals, and subsequently refuse to issue permits to Plaintiff for development of the Property as approved by the Planning Board with a purpose to improperly restrain trade and commerce. Defendants were and are aware that Plaintiff sought to operate a restaurant and residential rental property . . . ." (Dkt No. 50, Opposition Brief, p. 40) (emphasis added)

Plaintiff cannot paint all Defendants with the same broad brush and expect that its conspiracy claim will survive a Motion to Dismiss. Simply alleging that Defendant Baldini played a limited, intermediate role in bringing about the harm of which Plaintiff complains, and failing to allege facts and circumstances

_____

[19] See also, Barr v. Cty. of Clarion, 417 F. App'x 178, 182–83 (3d Cir. 2011) (holding that Probation officer's letter requesting judge amend probationer's sentence was not the proximate cause of any due process deprivation).

plausibly supporting a conclusion that particular Defendants had a meeting of the minds, does not pass muster under federal pleading standards.

Accordingly, Defendant Baldini's Motion to Dismiss the New Jersey common law conspiracy claim will be granted.

### Collateral estoppel

Lastly, Baldini asserts that "collateral estoppel bars Plaintiff's relitigation of fact issues" that could have been raised in the Superior Court action. (Dkt No. 46, Moving Brief, p. 18) This argument, which relies on hundreds of pages of documents filed in the Superior Court action (see Dkt No. 57, Reply Brief, p. 3), is not appropriate for disposition on a Motion to Dismiss. The Court cannot consider this extensive record on a Motion to Dismiss, and declines to convert the motion to a summary judgment motion. Defendant Baldini's Motion to Dismiss on collateral estoppel grounds will be denied without prejudice with leave to raise the argument, if appropriate, at summary judgment.

**C. Kix McNutly's and Sea Isle Inn's Motion to Dismiss**

The Restaurant Defendants argue that the Amended Complaint fails to plead facts that would support imputing the alleged actions of Defendant Desiderio to them. Plaintiff's opposition brief completely ignores this argument. Indeed, as to the claims asserted against both the Sea Isle Defendants (which includes Defendant Desiderio) and the Restaurant Defendants, Plaintiff's opposition brief is identical to the brief filed in opposition to

the Sea Isle Defendants' motion.  Neither brief distinguishes
between any of the Defendants; rather, Plaintiff's cursory
analysis simply refers generically and globally to "Defendants."
The distinction between Defendants however, is dispositive.

Plaintiff's claims against Kix McNutly's and Sea Isle Inn are
entirely based on two alleged facts:  Defendant Desiderio
allegedly owns the two restaurants, and those restaurants
allegedly benefitted from Desiderio's actions.  These allegations
are insufficient as a matter of law to support claims for
liability against the Restaurant Defendants.[20]  Whether asserting
liability under a traditional respondeat superior theory, or an
agency theory, in addition to the facts pled in the Amended
Complaint, Plaintiff must also allege facts that would plausibly
support a conclusion that Desiderio was acting in his role as
alleged principal of the two restaurants when he allegedly
directed municipal authorities to pretextually delay the
permitting process and issue the Stop Work Order.  See <u>Davis v.
Devereux Found.</u>, 209 N.J. 269, 303 (2012) ("Restatement [of Torts]
§ 228(1) describes four factors that collectively support a
finding that an employee's act is within the scope of his or her
employment: (a) it is of the kind he is employed to perform; (b)

---

[20]  This holding, of course, does not mean that such alleged
facts are irrelevant, nor does the Court rule on the admissibility
of any evidence Plaintiff may seek to introduce to prove the
allegations.  To the extent Plaintiff argues that such alleged
facts establish Defendant Desiderio's motive, they indeed may be
relevant.

it occurs substantially within the authorized time and space

limits; (c) it is actuated, at least in part, by a purpose to

serve the master; and (d) if force is intentionally used by the

servant against another, the use of force is not unexpectable by

the master."); Bridgewater-Raritan Educ. Ass'n v. Bd. of Educ. of

Bridgewater-Raritan Sch. Dist., Somerset Cty., 221 N.J. 349, 363

(2015)("authority arises 'when a third party reasonably believes

the actor has authority to act on behalf of the principal and that

belief is traceable to the principal's manifestations") (quoting

Restatement (Third) of Agency § 2.03). Plaintiff has not done so;

nor does it appear that Plaintiff could do so, as nothing in the

Amended Complaint suggests that controlling the decisions of

municipal employees and municipal bodies is the type of act a

private citizen / restaurant owner[21] is employed to, or usually

does, perform.

Accordingly, the Motion to Dismiss by Kix McNutley's and Sea

Isle Inn will be granted in its entirety.[22]

---

[21]    It is not clear whether Plaintiff argues that Defendant
Byrne's actions should be imputed to Kix McNutley's because
Defendant Byrne is allegedly a bartender at Kix McNutley's.
(Amend. Compl. ¶ 16)  Even if Plaintiff made such argument, the
same analysis would apply, and the Court would reach the same
holding with respect to Kix McNutley's liability.

[22]    Alternatively, the antitrust claims, the unfair
competition claim, and the abuse of process claim asserted against
Kix McNutly and Sea Isle Inn fail for the reasons set forth above.

**D. Leave to Amend**

This is a civil rights suit, and Plaintiff has requested leave to amend. Accordingly, the Court is obliged to allow Plaintiff to amend its pleading in an attempt to cure, if possible[23], the deficiencies identified herein. See generally, Mullin v. Balicki, 875 F.3d 140, 151 (3d Cir. 2017). Plaintiff will be granted 30 days to do so. Plaintiff is further advised that: (1) no further opportunities to amend will be granted absent good cause shown, or upon the opposing party's written consent, see Fed. R. Civ. P. 15(a)(2); (2) failing to amend in response to this Opinion and accompanying Order will result in the dismissal of claims with prejudice and (3) if the Amended Complaint does not assert a cause of action raising a federal question, or if upon an appropriate motion the Court determines that the Amended Complaint fails to state a federal claim, the Court intends to decline to exercise supplemental jurisdiction over this suit pursuant to 28 U.S.C. § 1367(c)(3).

**IV. CONCLUSION**

For the foregoing reasons, the Motion of Defendants Kix McNutley's and Sea Isle Inn will be granted in its entirety, and

---

[23] It appears that amendment may be futile at least with respect to the abuse of process claim and the punitive damages claim against Defendant Sea Isle City. If Plaintiff decides that it no longer wishes to pursue those claims, or any other claims presently asserted in the Amended Complaint, it shall file the appropriate Notice of Voluntary Dismissal or Stipulation of Dismissal. See Fed. R. Civ. P. 41(a).

the Sea Isle Defendants' Motions to Dismiss (including Defendant

Baldini's Motion to Dismiss) will be granted in part and denied in

part and as specifically set forth in the accompanying Order

issued on this date.


                                        s/ Renée Marie Bumb
Dated: March 27, 2018          _____
                                RENÉE MARIE BUMB
                                UNITED STATES DISTRICT JUDGE