IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| 8600 LANDIS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SEA ISLE CITY, et al.,<br><br>    Defendants. | Civil No. 17-2234 (RMB/JS)<br><br>**OPINION** |

**APPEARANCES:**

FOX ROTHSCHILD LLP
By: Timothy J. Bloh, Esq.
    Christopher C. Fallon, III, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, New Jersey 08401
    Counsel for Plaintiff

MADDEN & MADDEN, P.A.
By: Patrick J. Madden, Esq.
108 Kings Highway East, Suite 200
P.O. Box 210
Haddonfield, New Jersey 08033
    Counsel for Defendants City of Sea Isle City, Leonard
    Desiderio, George Savastano and Cornelius R. Byrne

COOPER LEVENSON, P.A.
By: Russell L. Lichtenstein, Esq.
1125 Atlantic Avenue, 3rd Floor
Atlantic City, New Jersey 08401
    Counsel for Defendants Kix McNutley's and Sea Isle Inn

SWARTZ CAMPBELL LLC
By: Joseph A. Venuti, Jr., Esq.
1000 Crawford Place, Suite 220
Mount Laurel, New Jersey 08054
    Counsel for Defendant Paul J. Baldini, Esq.

**BUMB**, UNITED STATES DISTRICT JUDGE:

In a previous Opinion and Order, this Court extensively discussed the multitude of pleading deficiencies contained in Plaintiff's Amended Complaint. See 8600 Landis, LLC v. City of Sea Isle City, No. CV 17-2234 (RMB/JS), 2018 WL 1509088 (D.N.J. Mar. 27, 2018). Nonetheless, the Court allowed Plaintiff an opportunity to amend its Amended Complaint in an attempt to cure, if possible, the deficiencies identified. See id. at *14. Plaintiff did amend, and all Defendants presently move to dismiss the claims asserted in the Second Amended Complaint, asserting that Plaintiff's attempt to put more factual meat on the bones of its pleading still falls short of stating a plausible claim for relief.[1]

The Court stated in its previous opinion that "if upon an appropriate motion the Court determines that the [Second] Amended Complaint fails to state a federal claim, the Court intends to

---

[1] Plaintiff states that it has "removed" from the Second Amended Complaint its previous claims for: (a) unfair competition, (b) abuse of process, (c) negligence, and (d) its claim for punitive damages against the City of Sea Isle City. (Opposition Brief, Dkt 77, p. 1) Although the Court previously directed that "[i]f Plaintiff decides that it no longer wishes to pursue . . . any . . . claims presently asserted in the Amended Complaint, it shall file the appropriate Notice of Voluntary Dismissal or Stipulation of Dismissal," 8600 Landis, LLC, 2018 WL 1509088 at *14 n.23, no notice or stipulation has been filed on the Court's docket. In light of the Court's directive, combined with Plaintiff's statement in its brief, the Court construes Plaintiff's inaction as a concession that the pleading deficiencies identified with respect to these claims cannot be cured, and these claims will be dismissed with prejudice. See Duke University v. Apotex, Inc., 2015 WL 2383408 at *2 (M.D.N.C. 2015) ("the Court has the discretion to impose conditions on a grant of leave to amend (such as deeming eliminated claims dismissed with prejudice)[.]").

decline to exercise supplemental jurisdiction over this suit pursuant to 28 U.S.C. § 1367(c)(3)." 8600 Landis, LLC, 2018 WL 1509088 at *14.  The Court now holds that the Second Amended Complaint fails to plausibly plead sufficient facts in support of any federal claim.  Accordingly, Defendants' Motions to Dismiss will be granted as to the federal claims and the Court will decline supplemental jurisdiction over the remaining state law claims.[2]

**I.   FACTS**

As the Second Amended Complaint merely adds additional details and context to the factual allegations contained in the Amended Complaint, the Court will primarily rely on its recitation of the alleged facts in its previous opinion.  See 8600 Landis, LLC, 2018 WL 1509088 at *1-2.  Generally and succinctly, this is a local land-use and zoning dispute; a dispute Plaintiff had adjudicated in its favor in state court but which Plaintiff seeks to continue before this Court under various federal and state causes of action. Plaintiff's theory of its case is that Defendant Desiderio, who is a member of Sea Isle City's planning board, as well as a local business owner and the Mayor of Sea Isle City, sought to illegally "damage and delay" Plaintiff's development of a 13-unit residential rental and restaurant space allegedly with the motive of eliminating Plaintiff as a competitor in the market for restaurant and

---

[2] In light of the disposition of the motions filed by the Sea Isle Defendants and Defendant Baldini, the Court need not reach the issues raised by the Restaurant Defendants' Motion to Dismiss which do not relate to the merits of the federal claims.

3

hospitality services. (Opposition Brief, Dkt 77, p. 4) The other individual Defendants, allegedly at Defendant Desiderio's direction and/or in conspiracy with him, assisted, or attempted to assist, Desiderio in his alleged plan to keep his alleged competitor out of the market. (Id.)

The Second Amended Complaint asserts the following federal claims: violation of Plaintiff's substantive due process and equal protection rights under 42 U.S.C. § 1983, conspiracy under § 1983 and 42 U.S.C. § 1985, and violation of the Sherman Act, 15 U.S.C. § 1 et seq.[3]

## II. MOTION TO DISMISS STANDARD

The Court incorporates herein by reference, and applies, the legal standard as set forth in its previous opinion in this case. See 8600 Landis, LLC, 2018 WL 1509088 at *3.

## III. ANALYSIS

### A. Substantive due process

As discussed in the previous Opinion, the issue is whether Plaintiff has plausibly pled facts supporting a conclusion that Defendant Desiderio and others engaged in the type of egregious self-dealing that shocks the judicial conscience. 8600 Landis, LLC,

---

[3] For completeness, the state law claims are: violation of the New Jersey Civil Rights Act, tortious interference with prospective economic advantage, common law conspiracy, and violations of the New Jersey Antitrust Act. However, as stated above, the Court does not rule on these claims.

2018 WL 1509088 at *4.[4]  "[T]he standard is sufficiently high to 'avoid converting federal courts into super zoning tribunals.'" Selig v. N. Whitehall Twp. Zoning Hearing Bd., 653 F. App'x 155, 157 (3d Cir. 2016) (quoting Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004), and citing United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 402 (3d Cir. 2003)).  Moreover, in the land-use context, the Third Circuit has cautioned that "not . . . every violation of state law [should be] 'constitutionalized' through the application of the substantive due process clause, and [] District Court[s] [should be] properly concerned with preventing this provision from turning into a broad authorization to review state actors' compliance with state law."  Whittaker v. County of Lawrence, 437 F. App'x 105 (3d Cir. 2011).[5]

---

[4] The parties do not dispute that Plaintiff has a property interest that is protected by the Due Process Clause.

[5] See also United Artists, 316 F.3d at 402 ("every appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but it is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983.  Land-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives."); Whittaker, 437 F. App'x at 109 ("the Property Owners simply allege that the defendants did not follow state law in taking their property.  While this certainly is not conduct without a remedy, the remedy is not provided by the Federal Constitution's substantive due process clause.  For this reason, we will affirm the District Court's dismissal of the substantive due process claim."); Blain v. Twp. of Radnor, 167 F. App'x 330, 333 (3d Cir. 2006) ("Th[e] [shocks the conscience] standard's stringency reflects maintenance of the proper proportions of constitutional, as opposed to ordinary tort, violations."); Maple Properties, Inc. v. Twp. of

5

With this legal foundation in mind, the Court turns to the factual allegations of the Second Amended Complaint. As stated in the previous Opinion, the Court's focus is on the facts-- not bald assertions, conclusions or mere labels.[6] Plaintiff alleges that Defendant Desiderio, at all relevant times, "owned" Kix McNutley's and Sea Isle Inn, both of which are located at 6400 Landis Avenue in Sea Isle City. (Second Amend. Compl., "S.A.C.," ¶¶ 16, 20-21) Defendant Desiderio allegedly holds a liquor license that is associated with one, or both, of those establishments. (S.A.C. ¶ 25-26) Plaintiff allegedly also holds a liquor license[7], and allegedly, it was for this reason that on May 10, 2010 Defendant Desiderio recused himself from the consideration of, and abstained from the vote on, Plaintiff's predecessor-in-interest's zoning

---

Upper Providence, 151 F. App'x 174, 180 (3d Cir. 2005) ("we have previously recognized that the politics and animosities that often animate local decision-making are not matters of constitutional concern."); see generally, City of Sacramento v. Lewis, 523 U.S. 833, 863–64 (1998) (rejecting a constitutional standard that "would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.").

[6] This principle is particularly important in the substantive due process analysis where "[w]hat is [conscience] shocking depends on the factual context." Selig, 653 F. App'x at 157 (citing United Artists). Therefore, Plaintiff's explanation in its opposition brief that the Second Amended Complaint "includes allegations of self-dealing, where public officials took advantage of their positions to benefit themselves and stifle competition to their personal businesses" (Opposition Brief, Dkt 77, p. 24), does little to advance the legal analysis.

[7] Allegedly, in Sea Isle City, there are only eight liquor licenses of the class that Plaintiff and Defendant Desiderio hold. (S.A.C. ¶ 74)

application. (Id. ¶ 26) Notably, every other Board Member in attendance at the meeting --seven members total, excluding Defendant Desiderio-- voted in favor of Plaintiff's application, and it was approved. (Id. Ex. D)

Nonetheless, Plaintiff alleges in conclusory fashion that after the Board Meeting, Defendant Desiderio "stayed involved" "behind the scenes" to "undermin[e] Plaintiff's project." (S.A.C. ¶¶ 27, 44) Only two examples are alleged, one rather conclusorily, and one undermined by the exhibits Plaintiff attaches to the Second Amended Complaint. The actions alleged are: (a) Defendant "had" two unidentified "business owners" "approach . . . a representative of Plaintiff to say that if Plaintiff sold their [sic] units instead of renting them, their [sic] problems would go away"[8]; and (b) twice "received correspondence [from Desiderio despite his purported recusal and abstention] relating to Plaintiff's project." (S.A.C. ¶¶ 28, 49) The "correspondence"-- attached as Exhibits H and N to the Second Amended Complaint-- merely reveals that Defendant Desiderio was one of many other town officials carbon-copied on the two letters concerning the progress of Plaintiff's project. Defendant Desiderio allegedly was motivated to take these actions by a desire to indirectly benefit Kix McNutly's and Sea Isle Inn, through

---

[8] It is not clear whether this incident occurred before or after Defendant Zoning Officer Cornelius Byrne allegedly "refused to issue the necessary permits for the first floor restaurant space" of Plaintiff's project. (S.A.C. ¶ 47) If it occurred before, the Second Amended Complaint is not clear as to what "problem" there might have been at that time.

7

alleged decreased competition from Plaintiff's project once it opened. (S.A.C. ¶ 27, 49, 61)  In conclusory fashion, Plaintiff also alleges that Defendant Desiderio "directed" unspecified conduct of the other Sea Isle City Defendants, without specifying which Defendants. (S.A.C. ¶¶ 5, 61, 90, 100)

The Second Amended Complaint further alleges that Defendant Byrne, the Zoning Officer who issued the Stop Work Order, is also a bartender at Kix McNutley's. (S.A.C. ¶¶ 3, 88)  While bartending one night, Defendant Byrne allegedly told "a representative of Plaintiff" that with regard to Plaintiff's project, Byrne "was acting on orders from" Defendant Desiderio. (S.A.C. ¶ 89)[9]

According to Plaintiff, these allegations support a conclusion that Defendants Desiderio and Byrne engaged in self-dealing, and Plaintiff asserts, Eichenlaub states that self-dealing meets the

---

[9] The Second Amended Complaint is vague as to what Defendant Desiderio allegedly "ordered" Defendant Byrne to do.  Notably, the Second Amended Complaint clearly pleads that Defendant Byrne issued the Stop Work Order after asking for, and receiving, Defendant Baldini's legal opinion on the matter. (S.A.C. ¶¶ 52-53)  The Second Amended Complaint specifically alleges that "*[a]s a result of* Paul J. Baldini's improper legal opinion *and in reliance on* Baldini's conclusions, on September 23, 2015, Mr. Byrne improperly issued, by correspondence, a Stop Work Order to Plaintiff, which significantly delayed Plaintiff from finishing construction on the first floor restaurant space and caused substantial monetary damages." (S.A.C. ¶ 57; emphasis added); (see also S.A.C. ¶ 5, alleging that Defendants Byrne and Baldini "improperly revoked Plaintiff's approvals necessary to complete [its] project.").  The Second Amended Complaint does not allege that Defendant Desiderio ordered Byrne to issue the Stop Work Order, nor does it allege that Defendant Desiderio had any involvement with the drafting of Defendant Baldini's legal opinion.

8

shocks the conscience standard.  See 385 F.3d at 286 ("as counsel for appellants acknowledged during oral argument, there is no allegation of corruption or self-dealing here.").  A comprehensive reading of Eichenlaub and the cases discussed therein, however, demonstrates that the allegations of the Second Amended Complaint are not sufficiently egregious to support a substantive due process claim.  Rather, the allegations concern a vigorously contested local land use dispute, one which a state court judge has already adjudicated in part.  Thus, this Court will avoid becoming a "super zoning tribunal[]."  Selig, 653 F. App'x at 157 (internal citation and quotation omitted).

Eichenlaub provides two "illustrat[ions] [of] the kinds of gross misconduct that have shocked the judicial conscience."  385 F.3d at 285.  First, Conroe Creosoting Co. v. Montgomery County, 249 F.3d 337 (5th Cir. 2001), as explained by the Third Circuit in Eichenlaub,[10] involved allegations that the defendants "fraudulently converted a tax levy for a $75,000 deficiency into an unauthorized seizure and forced sale and destruction of an $800,000 ongoing business."  385 F.3d at 285.  The Third Circuit explained that, in addition to what "amounted to a claim of an unconstitutional taking," the facts also "carried a whiff of self-dealing" insofar as the principal defendant's friends allegedly helped accomplish the

---

[10]  Maple Properties, 151 F. App'x at 180, also cites Conroe as an example of "patently egregious behavior recognized . . . to constitute a substantive due process claim."

9

taking by performing the auction services. Id. Also in Conroe, one of the defendants was alleged to have "signed a false affidavit in support of a tax warrant" in furtherance of the taking. 249 F.3d at 342.

Second, in Eichenlaub the Third Circuit explained that "Associates in Obstetrics & Gynecology v. Upper Merion Township, 270 F.Supp.2d 633 (E.D. Pa. 2003), is also a case that implicates more than just disagreement about conventional zoning or planning rules" because Associates in Obstetrics involved "allegations of hostility to constitutionally-protected activity," namely, the provision of abortion services. 385 F.3d at 285.

It is thus clear, after considering Eichenlaub's illustrations, that the factual allegations of the Second Amended Complaint do not amount to conscience shocking behavior by local zoning officials. First, both Conroe and Associates in Obstetrics involved allegations of an underlying violation of constitutional rights; a taking in Conroe, and the interference with access to abortion services in Associates in Obstetrics. In this case, no underlying *constitutional* violation is alleged.[11]

---

[11] Plaintiff alleges an underlying violation of the Sherman Act, but Plaintiff's rights in that regard arise from federal statute, not the United States Constitution. Eichenlaub and subsequent cases are clear that the relevant inquiry is whether "local officials are accused of seeking to hamper development in order to interfere with otherwise *constitutionally* protected activity." 385 F.3d at 286 (emphasis added); Button v. Snelson, 679 F. App'x 150, 154 (3d Cir. 2017) (citing Eichenlaub); Selig, 653 F. App'x at 157 (quoting Eichenlaub); Perano v. Twp. of Tilden, 423 F. App'x 234, 238 (3d Cir. 2011) (observing that the local officials'

10

Second, while "[t]here *may* be zoning disputes where, in the absence of a separately protected constitutional right, allegations of personal and political animus sufficiently shock the conscience in order to state a due process claim," Tucker Industrial Liquid Coatings, Inc. v. Borough of East Berlin, 656 F. App'x 1, 7 (3d Cir. 2016) (emphasis added), this is not such a case. In this regard, Ecotone Farm, LLC v. Ward, 639 F. App'x 118 (3d Cir. 2016), provides a contrasting example.

In Ecotone, there was no allegation of interference with a separate constitutional right, yet the Third Circuit held that the plaintiff had stated a substantive due process claim. In that case, the plaintiff alleged a campaign by local officials of "harassment and obstructionism" "over the course of several years motivated by personal vendettas." 639 F. App'x at 126. The Court explained that the factual allegations supported a plausible conclusion that local officials "repeated[ly] abuse[d] government power with the deliberate aim of harming someone." Id.

In this case, Plaintiff does not allege a years long pattern of "corruption and repeated abuse of power," "motivated by personal

---

acts in Eichenlaub "were not enough to shock the conscience when those actions were not coupled with interference with a constitutionally protected activity or ethnic bias."); Dotzel v. Ashbridge, 306 F. App'x 798, 801 (3d Cir. 2009) ("There is no evidence that the supervisors' conduct involved self-dealing or interfered with constitutionally protected activity."). In any event, as discussed infra, Plaintiff fails to state a claim for violation of the Sherman Act.

11

vendettas," and done with the purpose to harass and injure, like that alleged in Ecotone. 639 F. App'x at 126. Nor does it allege fraudulent-- indeed, potentially criminal-- activity, like that alleged in Conroe. At most, a very generous reading of the Second Amended Complaint supports only the inference that Defendant Desiderio, and perhaps Defendant Byrne, attempted-- unsuccessfully-- to pressure Plaintiff to change its intended use of the 13 residential units it planned to build.[12] Perhaps it may be inferred from the facts of the Second Amended Complaint that Defendant Desiderio had an improper motive-- i.e., self-enrichment that might indirectly result from Plaintiff's change of plans-- however, the law has been clear since United Artists was decided 15 years ago that improper motive is not enough. See, e.g., Locust Valley Golf Club, Inc. v. Upper Saucon Twp., 391 F. App'x 195, 199-200 (3d Cir. 2010) (concluding that Plaintiff's evidence of "self-dealing"

---

[12] Though not argued in its opposition briefs, Plaintiff's Second Amended Complaint appears to suggest that Defendant Paul Baldini somehow acted *ultra vires*. In particular, the Second Amended Complaint alleges that "Sea Isle City specifically conceded in Court to Judge Mendez that Baldini, as Solicitor, had no legal right to set aside the Plaintiff's Planning Board approvals." (S.A.C. ¶ 56) First, the transcript of the hearing before Judge Mendez, attached as Exhibit S to the Second Amended Complaint, is somewhat equivocal, and it may not be fair to characterize what was said as a "specific[] conce[ssion]." (Id.) In any event, even if, as a legal matter, the City Solicitor lacks authority to "set aside" a zoning board approval or issue a Stop Work Order, this fact would not plausibly support a conclusion that Defendant Baldini acted egregiously as a matter of federal constitutional law because the Second Amended Complaint specifically pleads that Defendant Zoning Officer Byrne, rather than Defendant Baldini, issued the Stop Work Order. (S.A.C. ¶¶ 6, 57)

12

amounted to, "at worst . . . improper motives. Without more, improper motives do not shock the conscience as a matter of law."); see also, Guiliani v Springfield Twp., 726 F. App'x 118, 123 (3d Cir. 2018) ("In United Artists, we applied Supreme Court precedent and rejected the improper-motive standard. We ruled that the substantive due process test is, instead, whether local officials' conduct shocks the conscience."); Chainey v. Street, 523 F.3d 200, 220 (3d Cir. 2008) ("merely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision.") (citing United Artists).[13] Accordingly, the Sea Isle Defendants' and Defendant Baldini's Motions to Dismiss will be granted as to the substantive due process claim.

### B. **Equal protection**

In the land use context, substantive due process claims are often accompanied by equal protection "class of one" claims. See, e.g., Tucker, 656 F. App'x at 7; Whittaker, 437 F. App'x at 109; Perano, 423 F. App'x at 238. As the cited cases demonstrate, the class of one claims usually fare no better than the due process claims. See also, Eichenlaub, 385 F.3d at 287 ("we do not view an equal protection claim as a device to dilute the stringent

---

[13] See also, Glob. Tower Assets, LLC v. Town of Rome, 810 F.3d 77, 91 (1st Cir. 2016) ("the Applicants' vague allegations of conflicts of interest and financially motivated conspiracy do not-- at least without far more-- show that the Planning Board acted in the kind of conscience-shocking fashion that we require for substantive due process challenges to make it past the gate.").

13

requirements needed to show a substantive due process claim.  It may be very unlikely that a claim that fails the substantive due process test will survive under an equal protection approach.").[14]  The same is true in this case.

In the previous opinion, the Court held that Plaintiff had not adequately identified the relevant comparator upon which its class of one claim is based.  8600 Landis, LLC, 2018 WL 1509088 at *5.  In the Second Amended Complaint a proposed comparator is more specifically identified; Plaintiff alleges that "the Sea Isle Defendants have engaged in intentional and disparate treatment of Plaintiff compared to other similarly situated Sea Isle City R-2 classified rental properties without a rational basis."  (S.A.C. ¶ 133)

The Sea Isle Defendants argue, and this Court agrees, that the new proposed comparator does not save Plaintiff's equal protection claim.  As the Sea Isle Defendants correctly observe, Plaintiff's case is based on the denial of permits and issuance of a Stop Work Order *for the restaurant space*. (S.A.C. ¶¶ 47, 57)  The Second Amended Complaint specifically pleads that "[o]n April 8, 2015, Plaintiff *was issued* building permits for the thirteen (13) residential units only."  (S.A.C. ¶¶ 46)  When these allegations are read in context with the rest of the factual allegations of the

---

[14] See also, Highway Materials, Inc. v. Whitemarsh Twp., 386 F. App'x 251, 259 (3d Cir. 2010) (quoting Eichenlaub).

14

Second Amended Complaint, the disconnect between the facts and Plaintiff's proposed comparator becomes apparent.

Plaintiff's alleged injuries flow from the denial of permits and the Stop Work Order as to the restaurant space, and Plaintiff alleges that in this regard it was treated differently than all other R-2 residential rental units in Sea Isle City, yet Plaintiff's Second Amended Complaint also alleges that "the only [other] place with food, liquor, and lodging [all in one location] in between the city centers of Sea Isle City and Avalon" is "Kix McNutley's / Sea Isle Inn." (S.A.C. ¶¶ 2, 76) Thus, it must be the case that the vast majority of R-2 classified rental spaces did not even apply for, much less get denied or approved for, permits related to construction of restaurant / food service space, therefore, as a matter of logic, it cannot be that they are "alike in all relevant respects" to Plaintiff. 8600 Landis, LLC, 2018 WL 1509088 at *5.

Moreover, as the Sea Isle Defendants also correctly observe, on an even more basic level, "Plaintiff's Second Amended Complaint fails to allege which of the[] 249 R-2 properties received building permits and how these building permits related to the proposed R-2 use." (Reply Brief, Dkt 85, p. 9) See generally, Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) ("We have held that class-of-one claims require an extremely high degree of similarity between the plaintiffs and the persons to whom they compare themselves. In the land-use context, this means more than pointing to nearby parcels in a vacuum and leaving it to the municipality to

15

disprove conclusory allegations that the owners of those parcels are similarly situated.").

For these reasons, Plaintiff fails to plausibly plead an equal protection class of one claim, and the Sea Isle Defendants' and Defendant Baldini's Motions to Dismiss will be granted as to this claim.[15]

**C. Conspiracy under 42 U.S.C. §§ 1983, 1985**

Plaintiff has failed to state a claim for any constitutional violation. Accordingly, the conspiracy claims fail as well. Whittaker, 437 F. App'x at 109; Perano, 423 F. App'x at 239.

Alternatively, as the Court previously ruled, "as a matter of law, [a class of one equal protection claim] cannot serve as the basis for a § 1985(3) conspiracy claim." 8600 Landis, LLC, 2018 WL 1509088, at *11 (D.N.J. Mar. 27, 2018) (collecting cases).

The Sea Isle Defendants' and Defendant Baldini's Motions to Dismiss will be granted as to the federal statutory conspiracy claims.

---

[15] In a letter filed with the Court long after briefing on the instant motions was completed (see Dkt 88), Plaintiff asserts additional facts which it says further support its equal protection claim. As an initial matter, as discussed during a telephone conference with the parties (Dkt 93), the Court does not construe Plaintiff's informal letter to be a formal motion to amend its complaint for a third time. Moreover, none of the facts alleged in the letter could potentially change the proposed comparator class, and therefore such facts, if they were to be considered-- which they are not-- would not change the Court's disposition of the equal protection claim.

**D. Sherman Act**

Plaintiff's Sherman Act claim-- the last claim asserted in the eight-count Second Amended Complaint-- is based on the vague assertion that issuing the Stop Work Order and refusing to issue permits "produced adverse anticompetitive effects within the restaurant and hospitality industry and relevant markets." (S.A.C. ¶ 162)

The Court's previous Opinion discussed the various pleading deficiencies associated with this claim. The Second Amended Complaint does not adequately cure all of the deficiencies; the pleading fails to allege sufficient facts to support a plausible claim. Two examples of the remaining deficiencies will suffice.

First, nowhere does Plaintiff identify the "anticompetitive effects" it alleges occurred in the market. It is axiomatic that antitrust law serves to protect competition, not competitors. See NYNEX Corp. v. Discon, Inc., 525 U.S. 128, 135 (1998) (in a § 1 Sherman Act case, explaining that "the plaintiff here must allege and prove harm, not just to a single competitor, but to the competitive process, i.e., to competition itself."); Deutscher Tennis Bund v. ATP Tour, Inc., 610 F.3d 820, 829 (3d Cir. 2010) ("Because even beneficial legitimate contracts or combinations restrain trade to some degree, § 1 of the Sherman Act has long been interpreted to prohibit only those contracts or combinations that are 'unreasonably restrictive of competitive conditions.'") (quoting Standard Oil Co. v. United States, 221 U.S. 1, 58 (1911)). The

17

Second Amended Complaint merely pleads that Plaintiff, an alleged competitor of Defendants Kix McNutley's and Sea Isle Inn, was harmed as a result of the alleged wrongful actions of Defendants. Such allegations are insufficient.

Second, the Court agrees with Defendant Baldini's observation that "Plaintiff [has] offered no explanation concerning the artificial 'geographic market' that it seemingly created at random." (Moving Brief, Dkt 87, p. 9) The Second Amended Complaint asserts that "the relevant geographic market for purposes of this matter are the town centers of Sea Isle City and Avalon." (S.A.C. ¶ 73) No further factual information is provided, and it is not at all apparent why a portion of Avalon-- a different municipality with its own ordinances concerning zoning and liquor licenses-- should be included in the relevant market, while a portion of Sea Isle City should be excluded from the relevant market.[16] Plaintiff has made no attempt to "'define the relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand.'" 8600 Landis, LLC, 2018 WL 1509088 at *8 (quoting Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 446 (3d Cir. 1997)).

Accordingly, the Court holds that the Second Amended Complaint fails to state a claim for violation of the Sherman Act. Defendants' Motions to Dismiss will be granted as to that claim.

---

[16] For context, it should also be noted that Avalon and Sea Isle City occupy separate barrier islands off the coast of New Jersey. The islands are connected by the Townsends Inlet Bridge. (S.A.C. Ex. A)

**IV. CONCLUSION**

Plaintiff may, or may not, be entitled to a remedy under state law for the harm it alleges it suffered at the hands of local zoning officials.  As set forth above, however, this local dispute does not rise to the level of a claim under the federal laws alleged.  Thus, for the foregoing reasons, the Defendants' Motions to Dismiss will be granted as to all federal claims asserted in the Second Amended Complaint, and pursuant to 28 U.S.C. § 1367(c)(3) this Court will decline to exercise supplemental jurisdiction over the remaining state law claims.  An appropriate Order accompanies this Opinion.


Dated: December 12, 2018       __ s/ Renée Marie Bumb _____
                               RENÉE MARIE BUMB
                               UNITED STATES DISTRICT JUDGE